J-S26014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROYCE ATKINS, | |
| Appellant | No. 2316 EDA 2017 |

Appeal from the Judgment of Sentence Entered June 26, 2017
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000142-2016

BEFORE: BENDER, P.J.E., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: Filed July 20, 2018

Appellant, Royce Atkins, appeals from the judgment of sentence of four to ten years' imprisonment, imposed after a jury convicted him of accidents involving death or personal injury, 75 Pa.C.S. § 3742(a). We affirm.

The trial court summarized the factual background and procedural history of this case, as follows:

I. <u>Criminal Charges</u>

On Friday, November 6, 2015, at approximately 6:30 p.m., [Appellant] was operating his blue 2007 MazdaSpeed 3 near the 3300 block of Schoenersville Road in Bethlehem, Pennsylvania. [Appellant] struck nine[-]year[-]old Darious Condash ("Condash") as Condash crossed Schoenersville Road with two friends. Condash was pronounced dead at St. Luke's Hospital that evening. [Appellant] did not stop at the scene of the accident, although he was aware that his vehicle had struck an object. Rather, he

_____

[*] Former Justice specially assigned to the Superior Court.

continued traveling on Schoenersville Road and pulled into a restaurant parking lot. He reportedly saw traffic continuing to travel northbound along Schoenersville Road and "assumed everything was okay." [Appellant] testified that he originally believed that he had hit a pothole or the center median. [Appellant] subsequently returned to his parents' home on Kathi Drive in Bethlehem, Pennsylvania[,] and parked his vehicle in their garage.

Later that night, [Appellant] hosted a party at his parents' residence. He showed his damaged vehicle to Ian Quire, Roosevelt Rebimbas, and Shane Brown and explained that he thought he had hit a deer on Steuben Road. Quire saw reports of a hit-and-run accident on Shoenersville Road that evening. On the following Monday, Quire anonymously reported [Appellant] to the police.

Responding to this anonymous tip, Detective Gary Hammer of the Colonial Regional Police Department went to [Appellant's] parents' home on Monday, November 9, 2015. He observed [Appellant's] damaged vehicle through the garage window. Detective Hammer interviewed [Appellant] at his place of employment that afternoon. [Appellant] readily admitted his involvement in the accident, but, in his written statement to police, [Appellant] claimed that he initially thought he had hit a median in the road.

II. Trial

A jury trial commenced on October 31, 2016. The jury received the case on November 3, 2016[,] and returned its verdict the same day. The jury convicted [Appellant] of violating Section 3742(a) of the Pennsylvania Motor Vehicle Code, Accidents Involving Death.[1] [Appellant] was remanded to Northampton County Prison to await sentencing.

_____

[1] This statute sets forth, in pertinent part:

**(a) General rule.--**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has

III. Sentencing

Sentencing was scheduled for Friday, January 2, 2017. Following trial, however, [Appellant] retained new counsel, who requested a continuance to prepare for sentencing. We continued [Appellant's] sentencing until March 3, 2017.

Both [Appellant] and the Commonwealth submitted sentencing memoranda. Attached to the Commonwealth's memorandum was a disc containing the audio recordings of four prison telephone conversations, three between [Appellant] and his girlfriend, Kristi Berger, and one between [Appellant] and his father. Counsel for [Appellant] received a copy of the Commonwealth's memorandum and a disc of the audio recordings of all of the conversations on or about February 21, 2017.

During the March 3, 2017 sentencing hearing, we heard testimony from Condash's mother and stepfather. The Commonwealth also read into the record a letter from Condash's elementary school counselor. [Appellant] testified on his own behalf. [Appellant's] mother also testified.

We queried [Appellant's] defense counsel regarding the recorded prison telephone conversations:

THE COURT: How would you address his – did you listen to the prison –

[Appellant's counsel]: I did.

---

fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

**(b) Penalties.--**

…

(3)(i) If the victim dies, any person violating subsection (a) commits a felony of the second degree, and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years and a mandatory minimum fine of $2,500, notwithstanding any other provision of law.

75 Pa.C.S. § 3742(a), (b)(3)(i).

- 3 -

THE COURT: Okay, you listened to the calls. How would you address his total lack of remorse and his statements regarding [the victim's] family?

[Appellant's counsel]: Well, I would address it as I addressed it in my memo. Throughout this process there has been -- all right, I-

THE COURT: You said I should not give much weight to the statements because he was angry when he made them; correct?

[Appellant's counsel]: He was angry -- yes.

[Appellant] and his defense counsel were fully aware of the content of the recorded prison telephone conversations on February 21, 2017, when they received the audio recordings of the telephone calls. Further, the court confirmed with defense counsel at sentencing that he was in fact aware of the recorded telephone conversations. [Appellant] did not move for recusal, did not object under Pennsylvania's Wiretap Act, and did not file a motion *in limine* prior to or at the time of sentencing.

Prior to imposing sentence, we noted the following considerations on the record:

THE COURT: [Appellant], you stand before this [c]ourt after having been found guilty by a jury of your peers for the crime of accidents involving death. I've considered the fact that you have no prior criminal record, you are 23 years old and single, you have never been married, and you have no children. You earned a certificate in automotive and diesel technology from Universal Technical Institute in October[] 2014. Prior to your incarceration you were employed full time as an automotive technician with Village Center Automotive from May[] 2016[] until October[] 2016. Before that you were employed full time as an automotive technician with Scott Automotive from November[] 2014 … until November[] 2015.

I have reviewed correspondence from your friends and relatives attesting to your good character and describing your upbringing. I have also considered your family background and relationships. I have received numerous letters regarding your character which have been sent by your relatives, friends, and acquaintances. You obviously

- 4 -

have caring and loving parents who have supported you throughout your life and who continue to support you today.

Your parents have also been affected by this crime. The information provided to me shows that your parents tried to help you in any way possible. They even sent you to Oregon for your final year of high school in order to attempt to distance you from acquaintances they thought were a bad influence on you. A factor, therefore, in your favor is the support that you have from your parents, your family, and your friends.

I have also considered the statements presented today by your family -- I'm sorry. I have also considered the statements today provided by [the victim's] family who spoke about their grief and the impact that your crime has had on them.

The Pre-Sentence Investigation concludes that, weighing against [Appellant] is the nature and circumstances of the instant offense. To [Appellant's] credit is that he has no criminal history, his education, his employment history, and the support of his family. When taking all of the above-stated information into consideration, prognosis for [Appellant's] community supervision after any period of incarceration is stated as fair, end quote.

Before each of your prison telephone calls you were informed that your telephone calls are being recorded. The Commonwealth has provided a disc to the Court and to defense counsel with your recorded prison telephone calls with your girlfriend, Kristi Berger, and with your father. I have listened to the prison recorded conversations provided by the Commonwealth.

On January 6, 2017, at 7:50 [a.m.], a call with girlfriend, Kristi, [Appellant] says, quote:

> I really hope the judge, he realizes that this shit is being blown out of proportion. Like with the other family, they are acting like they're the fucking victims. Like, what about my family? My family are the fucking victims, too.

Then again that day at 2:18 p.m., also with his girlfriend, Kristi, talking about his doctor's appointment for his toe.[2] [Appellant] says, quote:

> Well, the district attorney was there and he was, like, well, I don't want the sentencing to get pushed back because I believe the victim's family -- the victim's family wants to get closure and that pissed me off. I was like, are you fucking kidding me, dude. The victim's family. So that pissed me off a lot. And then I -- they just said that it was going to get pushed back until [Appellant's counsel] said March 3, and they agreed on that.

And then again on that day at 6:16 p.m., [Appellant] says:

> I just hate that district attorney. He's such an asshole.

On February 17, 2017, again a call with his girlfriend, Kristi. Kristi says:

> No, you can't, like, see anybody. They are setting it up that you can't see any public or anything, that you have to go in shackles and stuff.

And she's talking about the doctor's visit.

And then [Appellant] says, quote:

> Oh, my God, the fucking judge is a piece of shit. He's, like, a real fucking scumbag.

And then [Appellant] again says at 2:28 [p.m.]:

> There was, like, 20 of them there talking about the family members. There was, like, 20 of them.

Kristi said:

---

[2] For context, the record shows that Appellant had filed a petition for bail prior to sentencing, "in large part because of an infected ingrown toenail which requires specialized treatment." *See* Appellant's Petition for Furlough, 2/20/2017, at 1 (unnumbered pages). That request was denied. *Id.* at 2. Appellant then filed a petition to permit furlough from the prison in order to attend a medical appointment for his toe. *Id.*

Oh, well, that probably pressured the judge into revoking it.

And then at 4:12 [p.m.], [Appellant] says:

I don't know. I was just -- I was just so fucking disappointed. The judge was such a fucking dickbag about it and the fucking DA was like, oh, cause there was an issue, obviously it was a hit-and-run, so that would mean that he would be likely to flee so that makes him a flight risk, but also because there was concealment involved in the crime, that would make it another flight risk issue, and all this bullshit. There's just so much bullshit and they just talk out of the their ass like crazy. And fucking Phil [(Appellant's attorney)] made a really good point about, like, how if I can't be entitled to bail then no one should be entitled to bail. That's, like, fucking bullshit. But of course he's like, well, there's only two weeks left, and I'm thinking to myself we fucking filed this motion on December 23. It's their fucking fault they didn't figure this shit out, not our fucking fault.

And then at 5:18 [p.m.,] he says:

The judge is, like – he's like, is the prison capable of doing this procedure, and I'm like yeah, but there's, like, such a high risk of infection and he's like, well, is there any evidence of there being that likelihood, and I'm just thinking to myself, like, everyone is sick, like there's literally everyone's sick. I should have been like, well, what was the evidence you had to fucking revoke my bail in the first place. I really should have said that. I wanted to so bad but, I don't know, it's just fucking horse shit.

Then at 9:41 [p.m.] talking about the victim's family he says, quote:

I really wanted to say to them, like, don't you fucking people have jobs. I really wanted to say that to them.

And then at 10 o'clock [p.m.], talking about the victim's family again, quote:

I literally have absolutely no remorse for them whatsoever anymore. It makes me fucking sick.

And then at 11:33 [p.m.,] he says:

The judge was like, he doesn't even know anything about the jail. He's completely uneducated on, like, every single matter about it.

And then finally on January 15th, the call with his father, [Appellant] says, quote:

I am in here for the most ridiculous shit.

I've considered these recorded prison telephone call statements and … [Appellant's] lack of remorse. There are occasions when I as a judge have to guess whether a defendant is remorseful. This is not one of those occasions. He quite candidly says, quote:

I literally have absolutely no remorse for them whatsoever anymore. It makes me fucking sick. I am in here for the most ridiculous shit. I really hope the judge realizes that this shit is being blown out of proportion like with the other family. They are acting like they're the fucking victims. Like, what about my family, my family are the fucking victims, too.

And then talking about the victim's family, he says:

I really wanted to say to them, like, don't you fucking people have jobs. I really wanted to say that to them. I am in here for the most ridiculous shit.

I have considered these recorded telephone calls, statements, and considering [Appellant's] lack of remorse, the fact that [Appellant] has not shown any remorse after a jury of his peers found him guilty beyond a reasonable doubt even if he maintains his innocence is indicia of [Appellant's] lack of social conscience. I also believe [Appellant's] lack of

remorse will adversely affect his prospects of being rehabilitated.

In addition, I believe the statements that [Appellant] made regarding the [c]ourt and his statement that, quote, I am in here for the most ridiculous shit, evidence a total lack of respect for the court system and the jury's verdict and, importantly, they serve as a gauge by which I can evaluate his character and his potential for rehabilitation. I believe that these statements negatively weigh against [Appellant] in terms of his character and his potential for rehabilitation.

[Appellant's counsel] says that I should not give much weight to [Appellant's] recorded prison calls because he was just angry when he made those statements. I think it's actually the opposite. I should consider the statements because he was angry when he made them. As the saying goes, listen to people when they are angry because that is when the real truth comes out.

I've also considered [Appellant's] repeated efforts of concealment. The statute at issue states that, quote, the driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 3744 relating to duty to give information and render aid.

Therefore, under the statute, the crime is complete if the defendant is involved in an accident involving death and does not remain and give information and does not render aid. The statute does not require that the defendant conceal his whereabouts and does not require the defendant to conceal the vehicle involved in the accident. That's not required by the statute. Because the issue of concealment is not required by the statute -- if it was required by the statute I could not take that into account on sentencing because it would be part of the statute. Because concealment is not a factor required by the statute, it's a factor above and beyond what's required by the statute, I can consider that in fashioning a sentence.

He concealed his vehicle in his garage. He did not drive it even though it was operable. He specifically told his friends

- 9 -

not to say anything about the damage to his vehicle. For three days following the accident[,] he never reported the accident to the police. In fact, he never reported the -- he never reported the accident to the police. It was only after he was confronted by Detective Hammer that he admitted that he was involved in the accident. I believe that this concealment also is a factor that adversely weighs against the character of [Appellant], and [Appellant's] character is a statutory and case law factor that I can take into account in crafting a sentence.

I have considered the effect that the crime has had on the family of the deceased victim, Darious Condash. I have also considered the effect of [Appellant's] prison telephone statements and the effect that his complete lack of remorse have had on the family of Darious Condash. Every day for the rest of their lives Darious's family will be reminded of what you did and now they also will be reminded of what you said about them.

The death of a child is the most unnatural event that can happen to us as human beings. To quote the author, Jay Neugeboren, from his book, An Orphan's Tale, quote:

> A wife who loses a husband is called a widow. A husband who loses a wife is called a widower. A child who loses his parents is called an orphan. There is no word for a parent who loses a child. That's how awful the loss is.

No sentence that I can impose on you will serve justice for this family. Darious Condash will not attend middle school. He'll not play any sports. He'll not graduate from high school, and college. He'll not graduate from college. And he will never work in a profession. His family will not spend Christmas with him this year or any year in the future. Of all the people affected by your crime, you will be the least affected. You will go to jail. You will serve your time.

Eventually you will be released. You will return to your family. Your complete lack of remorse and your cruel and callus [*sic*] statements regarding Darious's family are indicia of a heartless human being who lacks social conscience.

I have weighed all the factors in your favor against the factors not in your favor. I have considered your age, the

information you have given me, the information in the Pre-Sentence Investigation, the sentencing memoranda submitted by the Commonwealth and defense, the recorded prison telephone calls, [Appellant's] lack of remorse and his callus [*sic*] comments regarding the victim's family, [Appellant's] character, the gravity of the offense as it relates to the effect on the victim and the victim's family, the testimony presented today, the guideline forms,[3] the statements made today by [Appellant's] counsel, counsel for the Commonwealth, my observations of [Appellant] during all court proceedings, the impact the crime has had on the victim's family, [Appellant's] family relationships and background, the support of his parents, your lack of a prior criminal record, your education, your work history, whether you are a good candidate for rehabilitation, your potential rehabilitative needs, the protection of the public, the need to deter future similar conduct, the fact that a lesser sentence would depreciate the seriousness of the crime, the recommendation of the prosecutor and the effect your crime has had on the family of the victim and the community.

[N.T. Sentencing] at 32-42.

---

[3] With respect to the guideline forms, the trial court explained:

[Appellant] had a Prior Record Score of zero. The Pennsylvania Sentencing Guidelines provide an Offense Gravity Score of nine for the offense of Accidents Involving Death. *See* 204 Pa. Code § 303.15. Thus, according, to the Basic Sentencing Matrix, a standard range sentence for [Appellant] was a minimum of twelve to twenty-four months['] imprisonment in a State Correctional Institution. *See* 204 Pa. Code § 303.16(a). By statute, however, Accidents Involving Death carries a mandatory minimum sentence of three years['] imprisonment in a State Correctional Institution. *See* Pa.C.S.[] § 3742(b)(3)(ii). Given this statutory deviation, the mitigated, standard, and aggravated range sentences all provide for a minimum sentence of three years['] imprisonment in a State Correctional Institution. Any sentence exceeding the mandatory minimum sentence is an above-aggravated range sentence.

Trial Court Opinion (TCO), 9/11/2017, at 20 (some internal citations omitted); *see also* N.T. Sentencing, 3/3/2017, at 4-5 (reviewing the guideline form).

[Appellant] was then sentenced to serve a term of imprisonment, in a State Correctional Institution, for a minimum period of four years to a maximum period of ten years.

IV. Post-Sentence Motions

On March 13, 2017, [Appellant] timely filed several post-sentence motions. We denied [Appellant's] motions on June 26, 2017.[1]

> [1] Our Opinion only addressed [Appellant's] recusal argument. **See generally** Opinion and Order of Court, dated June 26, 2017.

V. Appeal

[Appellant] filed a timely notice of appeal to the Pennsylvania Superior Court on July 14, 2017….

TCO at 1-16 (some internal citations omitted).

After filing his timely notice of appeal, Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[4] The trial court issued an opinion pursuant to Rule 1925(a) on September 11, 2017, followed by an addendum to that opinion on November 1, 2017.[5]

_____

[4] On July 14, 2017, the trial court entered an order directing Appellant to file a Rule 1925(b) statement within 21 days of its order, *i.e.*, by August 4, 2017. However, the docket reflects that Appellant did not receive notice of the trial court's order until August 7, 2017. Appellant filed his Rule 1925(b) statement on that same day, along with a petition for an enlargement of time to file his concise statement, or for the reinstatement of his appellate rights *nunc pro tunc*. **See** Petition, 8/7/2017, at 1 (unnumbered pages). The trial court granted Appellant's petition on August 8, 2017.

[5] The trial court's addendum supplemented the case law previously discussed in its initial Rule 1925(a) opinion with a recent decision from our Supreme Court. **See** Addendum to Rule 1925(a) Opinion (Addendum), 11/1/2017, at 3-4.

Presently, Appellant raises the following issues for our review:

1. [] Appellant received an above-aggravated range sentence of 4 to 10 years after his conviction for an accidental hit-and-run death. Should the Court vacate this unreasonable sentence where (1) [] Appellant was not at fault for the accident[;] (2) the mandatory minimum sentence exceeded the maximum standard range sentence by 1 year[;] (3) [] Appellant had no prior criminal [record;] and (4) the circumstances of his case were no more egregious than a typical hit-and-run [accident]?

2. After his conviction, [] Appellant was recorded making disparaging comments about the judge on the prison phone system. The judge relied on these calls in part to justify his above-aggravated range sentence. Should[] the judge have recused himself given his evident bias against … Appellant for these concededly intemperate remarks?

Appellant's Brief at 4.

In his first issue, Appellant claims that the trial court imposed an unreasonable sentence because "his minimum sentence exceed[s] the top of the aggravated Sentencing Guideline range by 1 year even though his offense was no worse than a typical hit-and-run." *Id.* at 16. Appellant argues the trial court "unduly emphasized the gravity of the offense at the expense of his legitimate rehabilitative needs." *Id.* He explains that "[h]e was not at fault for the accident, and … was never charged with any crime relating to [the victim's] death." *Id.* at 18. He further points out that he had no prior criminal record, and has strong family and community ties. *Id.* at 19. In addition, Appellant claims that his purported attempts at concealment and the prison phone calls do not justify the trial court's upward departure. *See id.* at 20.

- 13 -

Appellant's argument challenges the discretionary aspects of his sentence. This Court has explained:

> Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:
>
> > An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (internal citation to case law omitted; some brackets added).

In the case *sub judice*, Appellant filed a timely notice of appeal and raised this issue in a post-sentence motion. His brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f).[6] Therefore, we must next ascertain whether Appellant has raised a substantial question for our review.

---

[6] We note that Appellant did not place his Rule 2119(f) statement in a separate section of his brief, but instead included it at the beginning of his argument section. **See** Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."). Nevertheless, we decline to find waiver on this basis. In addition, the Commonwealth has not objected to this error.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Further:

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.

When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

*Id.* (internal citations omitted; brackets in original).

As stated *supra*, Appellant claims that the trial court sentenced him to an above-aggravated range sentence even though his offense was no worse than a typical hit-and-run accident, and "unduly emphasized the gravity of the offense at the expense of his legitimate rehabilitative needs." Appellant's Brief at 16. This claim presents a substantial question for our review. ***Commonwealth v. Vega***, 850 A.2d 1277, 1280 (Pa. Super. 2004) (determining that the appellant presented a plausible argument that his sentence is contrary to the fundamental norms underlying the sentencing process where he asserted "his sentence is manifestly excessive in that it is grossly disproportionate to his crime, particularly in light of the facts surrounding the criminal episode and his background"); ***see also Caldwell***, 117 A.3d at 770 (ascertaining that the appellant's challenge that his sentence

- 15 -

was excessive, along with his claim that the trial court failed to consider his rehabilitative needs upon fashioning the sentence, presented a substantial question).

Having concluded that Appellant has presented a substantial question for our review, we move now to the merits of Appellant's argument. We apply the following standard of review:

> When reviewing a challenge to the discretionary aspects of sentencing, we determine whether the trial court has abused its discretion. We observe:
>
>> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Caldwell*, 117 A.3d at 770 (internal citations omitted).

Further, we note that "[t]he appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). We also acknowledge:

> In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>>
>> (3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

We conclude that Appellant's sentence is not unreasonable. Although he claims that his offense is a typical hit-and-run, and that the trial court unduly emphasized the gravity of the offense over his rehabilitative needs, the record belies these arguments. Indeed, the trial court considered Appellant's rehabilitative needs, determining that the statements Appellant made on the prison phone calls "negatively weigh against Appellant in terms of his character and his potential for rehabilitation[,]" and thereby warrant a lengthier sentence. **See** TCO at 12 (quoting N.T. Sentencing at 40-41), **see also** TCO at 34-35.[7]

Appellant also argues that "there is no legal basis to blame [him] for Condash's death[,]" and therefore the trial court "cannot justify his sentence by reference to the victim's age or the impact of his death on his family because these factors bear no relation to the offense for which [Appellant]

---

[7] At the outset, we agree with the trial court that Appellant has waived any argument about the Commonwealth's use of the prison phone calls because he did not object under Pennsylvania's Wiretap Act, 18 Pa.C.S. § 5704, or file a motion precluding their use prior to or at the time of sentencing. **See** TCO at 5, 39-41. However, even if not waived, we would also agree with the trial court that the recorded telephone conversations were obtained as part of Appellant's prosecution pursuant to Section 5704(14)(i)(C) of the Wiretap Act. TCO at 41-45; **see also** 18 Pa.C.S. § 5704(14)(i)(C) (permitting recorded telephone conversations to be divulged in the prosecution of any crime). Moreover, we have no reason to conclude that the trial court abused its discretion in considering the recordings as indicators of Appellant's character and lack of capacity for rehabilitation, instead of as mere expressions of temporary annoyance and frustration. **See** Appellant's Brief at 22.

was convicted." Appellant's Brief at 18, 19. We, however, do not believe the trial court did so. In discussing the victim's death and its impact on his family, the trial court considered not only the effect of Appellant's crime, but also "the effect of [Appellant's] prison telephone statements and the effect that his complete lack of remorse ha[s] had on the family of Darious Condash." N.T. Sentencing at 43.[8] By describing how Condash's life was cut short at nine years old, the trial court was not blaming Appellant for his death, but instead was illustrating the loss experienced by Condash and his family, and how Appellant's "complete lack of remorse and cruel and call[o]us statements regarding [the victim's] family are indicia of a heartless human being who lacks social conscience." *Id.* at 44.

Finally, although Appellant urges us to interpret certain facts in a way that would negate any finding of concealment, *see* Appellant's Brief at 21, the trial court did not abuse its discretion by weighing that Appellant parked his vehicle in his garage after the accident, did not drive it even though it was operable, specifically told friends not to say anything about the damage to the vehicle, and did not report the accident to the police until he was confronted

---

[8] In addition, the trial court stated that the hit-and-run here occurred in an atypical way as "[f]orensic evidence adduced at trial indicates that Condash's head and face impacted [Appellant's] car only one foot in front of the windshield[,]" and "[t]he force of the impact propelled Condash's body a significant distance in front of [Appellant's] vehicle." TCO at 36. Nevertheless, Appellant "did not stop at the scene of the accident, although he testified at trial that he knew he had stuck an object[,]" nor did he notify police. *Id.*

by Detective Hammer. N.T. Sentencing at 42.[9] Accordingly, we discern no abuse of discretion by the trial court in fashioning Appellant's sentence.

In his second issue, Appellant argues that the trial judge failed to recuse himself upon receipt of Appellant's recorded prison telephone calls. Appellant's Brief at 24. He claims that the trial judge "appeared to be personally offended by the tone and content of [Appellant's] recorded statements[,]" and "allowed his personal animus toward [Appellant] influence his imposition of an appropriate sentence." *Id.* The trial court, however, found this claim to be waived because Appellant did not object nor raise the issue of recusal at the time of sentencing. *See* TCO at 48-49; Addendum at 3.[10] In support, the trial court relied on *Lomas v. Kravitz*, 170 A.3d 380 (Pa. 2017), in which our Supreme Court explained that "a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present

_____

[9] We also observe that Appellant had initially told his friends that "he thought he had hit a deer on Steuben Road[,]" in spite of being aware that his vehicle had struck an object on Schoenersville Road. *See* TCO at 2.

[10] We note that the Commonwealth did not surprise Appellant with their use of the recordings; the trial court stated that the Commonwealth provided Appellant with the recorded prison conversations over a week before sentencing, and Appellant's counsel said at sentencing that he had listened to the prison calls. *See* Addendum at 2-3; N.T. Sentencing at 21-22. Consequently, in its opinion, the trial court suggested that Appellant could have also raised his recusal issue prior to sentencing since he had the recordings at that point. However, Appellant's recusal argument centers on the trial court's purported reaction to the recordings at sentencing and its subsequent imposition of an above-aggravated range sentence, which Appellant could not have known of before the sentencing proceeding.

a motion to recuse at that time, then the party's recusal issue is time-barred and waived." *Id.* at 390 (citations omitted); *see also* Addendum at 2. By waiting until his post-sentence motion to raise the issue of recusal, the trial court discerned that Appellant did not raise the issue at the 'earliest possible moment' and therefore had waived it. *See* TCO at 49.

Our review of the relevant case law indicates a lack of clarity around what constitutes the 'earliest possible moment.' *See Lomas*, 170 A.3d at 393 ("[T]here is arguably some procedural ambiguity in Pennsylvania's recusal jurisprudence that may result in requests not being sought with absolute immediacy. Relative to initiating a recusal request, the case law has variously referred to an 'application by petition' or the filing of a 'motion,' as well as the lodging of an 'objection[.'] Although this historical lack of consistency may be attributable to deviations in nomenclature, it is notable that there are no statutory or rules-based procedures for recusal in Pennsylvania, as there are in other jurisdictions.") (Saylor, C.J., dissenting) (citations and footnotes omitted).[11] Nevertheless, Appellant makes no argument on appeal as to when he was required to raise the recusal issue, and he does not address the trial court's finding of waiver whatsoever. *See* Appellant's Brief at 24. We decline to craft those arguments for him. *See Banfield v. Cortes*, 110 A.3d 155, 168 n.11 (Pa. 2015) ("Where an appellate brief fails to provide any discussion

---

[11] The Majority in *Lomas* determined that it "need not decide the exact moment in which [the a]ppellants were required to present the recusal issue to avoid waiver." *Lomas*, 170 A.3d at 391.

of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him."). Accordingly, no relief is due.[12]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2018

---

[12] Even if not waived, we reiterate that Appellant's sentence of four to ten years' imprisonment is not unreasonable and, thus, the trial court's sentence alone does not demonstrate bias.