674 P.2d 952 (1984)
Carl JOHNSON, Petitioner,
v.
The DISTRICT COURT In and For the COUNTY OF JEFFERSON, State of Colorado, and the Honorable Judge Gaspar Perricone, one of the judges thereof, Respondents.
No. 83SA368.
Supreme Court of Colorado, En Banc.
January 9, 1984.
*953 John R. Holland, Denver, for petitioner.
Stephen W. Miller, Golden, Victor F. Boog, Bradley, Campbell & Carney, P.C., Golden, for respondents.
NEIGHBORS, Justice.
This is an original proceeding filed pursuant to C.A.R. 21 by the petitioner, Carl Johnson. We issued a rule to show cause why the respondent judge should not disqualify himself and why he should not grant a change of venue. We now make the rule absolute, in part, and discharge it, in part.

I.
In April 1983, we vacated the district court's judgment denying the petitioner's request for a preliminary injunction and remanded the case to the trial court for further proceedings to determine whether the Jefferson County Board of Health's (Board) threats to discharge him, which precipitated his resignation as the Jefferson County Public Health Officer, violated constitutional standards designed to protect free speech. Johnson v. Jefferson County Board of Health, 662 P.2d 463 (Colo.1983).
On July 29, 1983, the petitioner filed a motion for a change of judge and a change of venue in the respondent court. As grounds for the disqualification motion, the petitioner alleged that the respondent judge is prejudiced against him. The petitioner based his motion for a change of venue upon his contention that the prior proceedings in the case and widely-publicized allegations made by the Board had so prejudiced Jefferson County inhabitants against him that he could not receive a fair trial on his damage claims.
All of the incidents which gave rise to the disqualification motion consist of ex parte communications between counsel and the respondent judge, conversations between attorneys, and informal conferences between the judge and the lawyers which were not recorded by a court reporter. Understandably, numerous factual disputes now exist over the contents of the statements attributed to the respondent judge and the respective attorneys. In order to place this controversy in focus, we will summarize the allegations made in the affidavits of the petitioner's attorney, the judge's response which is contained in his order denying the petitioner's motion, and the affidavits of the attorneys who represent the Board and the individual Board members.
The petitioner's attorney, John Holland (Holland), submitted two affidavits in support of the motion for a change of judge. *954 In his affidavits, Holland states that on May 20, 1983, the respondent judge summoned counsel for all parties to a status conference to determine the course of further proceedings in light of the remand from this court. Holland alleges that the respondent judge made the following statements to him before opposing counsel arrived: (1) The judge stated that he had talked with the Board's attorney about settlement. Holland said both he and his client were not opposed to a settlement, but the Board would not seriously consider it. The judge then replied that he could "make a settlement happen." (2) He further said, "[s]peaking as a private citizen of Jefferson County," in his opinion, "it would not be good for Carl Johnson to get his job back. In fact it would be a disaster."
Holland claims in his affidavit that the judge made the following comments after the status conference began: (1) The respondent judge wanted all parties to submit proposed findings of fact and conclusions of law because "I don't have the time to review this whole record with my case load."[1] (2) The judge expressed anger at the ruling of this court, saying that it was "gutless" not to direct him to do "what they wanted," and that it was apparent to him that "Joe Quinn [Justice Joseph R. Quinn, the author of the court's opinion] wants Johnson to get his job back," and that if "I [respondent judge] don't give it to him, he will." (3) The judge said that Holland should have brought suit in the federal court where they understand these kinds of cases.
Holland further alleges that approximately two weeks later he spoke with the Board's attorney, Stephen Miller (Miller), who told him that the respondent judge had attempted to arrange a settlement conference for all parties with Judge Anthony Vollack. Holland also claims that Miller told him that both he and his father had worked in Judge Vollack's law firm and that Judge Vollack had previously represented the Board. Holland states that he then called the respondent judge, who told him that he had asked Judge Vollack to speak directly to the Board members about settling the case.
The respondent judge, in his order denying the petitioner's motion, states that he "feels compelled to comment on some of the allegations contained in Mr. Holland's affidavits only because of inferences therein that this Court was disrespectful to the Supreme Court and one of its justices." The judge denies making the statement regarding his ability to make a settlement happen. The judge claims that the statements about the petitioner getting his job back were taken out of context. He alleges that he only meant that since the Board did not want petitioner reinstated, "it would be better for [petitioner] to accept a monetary settlement because it would not be good for him [petitioner] to have his job back." (Emphasis in original.) The respondent judge admits requesting that the parties' proposed findings of fact be referenced to folio numbers in the transcript because he did not have time to review the entire record, but again claims that this statement *955 was taken out of context. The judge admits agreeing with Holland that "the federal court has more experience in dealing with First Amendment issues," and that he was disappointed "that this matter could not be disposed of quickly as a result of the remand." The judge "denies any reference in a derogatory sense toward Justice Quinn or the Supreme Court." Finally, the judge states that he does not recall telling petitioner's attorney that he asked Judge Vollack to speak to the Board members. He also states that he spoke with Judge Vollack who also has no recollection of the conversation. The order issued by the respondent judge concludes: "[B]ecause none of the statements purported to be made display any prejudice or predispositional thought by the Court, the Court denies the motion for change of judge." The motion for a change of venue was denied without explanation.
The attorneys representing the Board and its individual members submitted affidavits opposing the petitioner's motion and have represented the respondent judge in this original proceeding. We note that C.R. C.P. 97, which governs disqualification, does not authorize the filing of counter-affidavits. See People ex rel. Burke v. District Court, 60 Colo. 1, 152 P. 149 (1915). However, the facts alleged in these affidavits are useful in placing this controversy in perspective. Miller agrees that respondent judge made the statement that he did not have the time to review the whole record. Miller does not recall hearing the judge make any of the statements regarding this court, and states that the judge's demeanor could not be described as angry. Miller agrees he advised Holland that respondent judge had told him about contacting Judge Vollack regarding a settlement conference. Miller also advised Holland of his and his father's "association with Judge Vollack in the private practice of law." However, Miller denies telling Holland that he or his father were ever in Judge Vollack's law firm, or that Judge Vollack represented the Board.
Victor Boog, the attorney who represents the Board members individually, states that respondent judge suggested submission of proposed findings of fact, and that "[e]ach of the attorneys present concluded that such a procedure would be appropriate and would eliminate any need to review the whole record since counsel could direct the Judge to those portions of the record which they deemed relevant." He denies that the judge made any statement at the status conference regarding this court or Justice Quinn. Boog then enumerates actions taken by the respondent judge during earlier proceedings in the case which he views as exhibiting "the highest standards of judicial integrity and fair play" on the part of the judge.

II.
C.R.C.P. 97 provides:
"A judge shall be disqualified in an action in which he is interested or prejudiced, or has been of counsel for any party, or is or has been a material witness, or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit. Upon the filing by a party of such a motion all other proceedings in the case shall be suspended until a ruling is made thereon. Upon disqualifying himself, a judge shall notify forthwith the chief judge of the district who shall assign another judge in the district to hear the action. If no other judge in the district is available or qualified, the chief judge shall notify forthwith the court administrator who shall obtain from the Chief Justice the assignment of a replacement judge."
Ordinarily, the question of whether a judge should be disqualified in a civil case is a matter within the discretion of the trial court. In re Marriage of Mann, 655 P.2d 814 (Colo.1982). However, where an attorney *956 for one of the litigants signs a verified affidavit alleging conduct and statements on the part of a trial judge which, if true, show bias or prejudice or the appearance of bias or prejudice on the part of the trial judge, it is an abuse of discretion if that judge does not withdraw from the case, even though he or she believes the statements are false or that the meaning attributed to them by the party seeking recusal is erroneous. In such a case, the judge should not pass upon the truth or falsity of the facts alleged in the affidavit, but only upon the adequacy of the motion as a matter of law. "The motion and supporting affidavit speak for themselves and the only question involved is whether the facts alleged are sufficient to compel the judge to disqualify himself." Kovacheff v. Langhart, 147 Colo. 339, 343-44, 363 P.2d 702, 705 (1961). The motion and affidavits are legally adequate if they "state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent him from dealing fairly" with the party seeking recusal. People v. Botham, 629 P.2d 589, 595 (Colo.1981).[2]
The facts alleged by the petitioner's attorney are legally adequate under this standard. They are not based on mere "suspicion, surmise, speculation, rationalization, conjecture, [or] innuendo"; nor are they "statements of mere conclusions of the pleader" which may not form the basis of a legally sufficient motion to disqualify. Carr v. Barnes, 196 Colo. 70, 73, 580 P.2d 803, 805 (1978). Rather, they are reports concerning actual events and statements which, if true, evidence partiality or the appearance of bias or prejudice against the petitioner on the part of the respondent judge.
The purpose of statutes and court rules which provide for the disqualification of a trial judge is to guarantee that no person is forced to litigate before a judge with a "bent of mind." See Botham, 629 P.2d at 595; Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Although the trial judge is convinced of his or her own impartiality, if it nonetheless appears to the parties or to the public that the judge may be biased or prejudiced, the same harm to public confidence in the administration of justice occurs. See Botham, 629 P.2d at 595. As we stated in People v. District Court, 192 Colo. 503, 507-08, 560 P.2d 828, 831-32 (1977):
"Basic to our system of justice is the precept that a judge must be free of all taint of bias and partiality. `The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals.' Moreover, not only the actuality of fairness must concern us, but the appearance of fairness as well. A trial judge must `conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.' Courts must meticulously avoid any appearance of partiality, not merely to secure the confidence of the litigants immediately involved, but `to retain public respect and secure willing and ready obedience to their judgments.'"
(Citations omitted.) See also Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). It is our duty to eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied. Therefore, under the circumstances present in this case, the respondent judge should have disqualified himself.

*957 III.
The respondent next argues that the petitioner waived his right to move for disqualification of the judge by waiting from May 20, 1983, when most of the facts alleged to establish prejudice were known to the petitioner, until July 29, 1983, to file his motion. C.R.C.P. 98(k) provides in part: "A party does not waive his right to change of judge or place of trial if his objection thereto is made in apt time." While we have recognized that when the grounds for disqualification are known, a motion to disqualify should be filed prior to taking any other steps in the case, Aaberg v. District Court, 136 Colo. 525, 319 P.2d 491 (1957), a finding of waiver depends upon the facts and circumstances present in each particular case. We are not prepared to say that the elapsed time of two months in this case constitutes a waiver, especially in view of the fact that the only action taken by petitioner during this period was to request an extension of time in which to file his proposed findings of fact and conclusions of law. See Dominic Leone Construction Co. v. District Court, 150 Colo. 47, 370 P.2d 759 (1962). Moreover, a request for the disqualification of a trial judge is a most serious undertaking which should not be pursued absent thorough factual investigation and legal research.

IV.
Finally, petitioner claims that the respondent judge abused his discretion by refusing to grant a change of venue. We do not reach this issue. C.R.C.P. 97 provides in pertinent part: "Upon the filing by a party of such a motion all other proceedings in the case shall be suspended until a ruling is made thereon." Once the motion for disqualification was made, the respondent judge was obligated to review the motion and decide whether it was sufficient to require his recusal. See City of Trinidad v. District Court, 196 Colo. 106, 581 P.2d 304 (1978); Brouwer v. District Court, 169 Colo. 303, 455 P.2d 207 (1969). Since we have held that it was, the respondent judge did not have the authority to determine any other substantive matter that was pending before the court. See State ex rel. Cobb v. Bailey, 349 So.2d 849 (Fla.App.1977); Creel v. Shadley, 513 P.2d 755 (Or.1973). It would be incongruous to permit a disqualified judge to rule on a discretionary motion, such as a request for a change of venue, which affects the substantial rights of the parties. Accordingly, the motion for a change of venue must be decided by the judge to whom this case is assigned as required by C.R.C.P. 97.

V.
We hold that the respondent judge abused his discretion by refusing to disqualify himself. The order denying the motion for a change of venue is vacated because the respondent judge had no authority to rule on the matter. We therefore make the rule absolute, in part, and discharge it, in part. A new trial judge should be chosen in accordance with the provisions of C.R.C.P. 97. The judge to whom this case is assigned should promptly rule on all pending motions and thereafter comply with the remand contained in our earlier decision in Johnson v. Jefferson County Board of Health, 662 P.2d 463 (Colo.1983).
ERICKSON, C.J., and QUINN, J., do not participate.
NOTES
[1] In our earlier opinion we gave the following instructions to the trial court:

"Because the court failed to apply the appropriate constitutional standards in resolving Johnson's claim for a temporary injunction, further proceedings are necessary on this aspect of the case. If the court upon remand considers the present state of the record adequate to resolve Johnson's request for a temporary injunction, then it may enter findings of fact and conclusions of law without taking additional evidence. If, however, the court regards the present record as inadequate, then it should permit the parties to present additional evidence and enter appropriate findings and conclusions.
"The judgment is vacated and the cause is remanded for application of the appropriate constitutional standards in accordance with the views herein expressed."
Johnson, 662 P.2d at 478.
We also stated:
"We hasten to add that where the employee has shown that his constitutionally protected conduct was a substantial or motivating factor in the decision to terminate him from employment, the trial court must carefully scrutinize the evidence to be sure that the employer's asserted reasons for termination are not a mere pretext for what is really retaliatory action taken against the employee's exercise of free speech."
Johnson, 662 P.2d at 477-78.
[2] This opinion contains citations to cases involving disqualification in both criminal and civil settings. Crim.P. 21(b) provides that if the motion and affidavits state facts showing grounds for disqualification, the judge shall immediately disqualify himself. While C.R.C.P. 97 does not so provide, the policy considerations underlying the rationale for the criminal rule are persuasive in this civil case, and the analytical framework in the criminal cases is instructive.