David **SOFRONSKI**, Appellant,

v.

**CIVIL SERVICE COMMISSION, CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1996.

Decided May 28, 1997.

Martin Weinberg and Anthony J. Molloy, Philadelphia, for appellant.

Frank Finch, III, Philadelphia, for appellee.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

David Sofronski (Sofronski), a former police lieutenant of the Philadelphia Police Department, appeals from an order of the Court of Common Pleas of Philadelphia County dismissing his appeal from the decision of the Civil Service Commission of the City of Philadelphia (Commission). The issues raised on appeal are: (1) whether the Commission had jurisdiction to consider Sofronski's appeal filed more than six years after expiration of the thirty-day appeal period; and (2) whether the Commission's finding that Sofronski's resignation was voluntary is supported by substantial evidence.

On November 30, 1984, Sofronski was discharged for accepting money from Robert Sadowl, a video poker machine operator, after Sadowl testified at the federal police corruption trial that he had paid Sofronski $750 to $950 a month for protection of his illegal activities. Sofronski was not one of the named defendants in the federal criminal trial. Pursuant to the collective bargaining agreement with the City of Philadelphia (City), the Fraternal Order of Police (FOP) filed grievances on behalf of Sofronski and eight other police officers who were also discharged after they were implicated during the federal trial. Subsequently, the City and

FOP submitted the grievances for arbitration.

The City thereafter could not locate Sadowl to serve a subpoena for his appearance at an arbitration hearing. As a result, the City served the subpoena on Sadowl's attorney, who later appeared at the hearing and stated that Sadowl had moved to Florida and would not testify against Sofronski and that he was not authorized to accept the service of the subpoena for Sadowl.

On November 25, 1985, the arbitrator ordered the City to reinstate two grievants, Sofronski and Louis Gniotek, unless within two weeks it could bring in the witnesses who implicated them at the federal criminal trial.[1] The arbitrator further ordered the parties to discuss a possible settlement of remedy aspects of the cases during the four-week period following reinstatement of Sofronski and Gniotek. Finally, the arbitrator stated that in the event of institution of criminal proceedings against them, the City may request a stay of the award.

The City subsequently informed Sofronski and his attorney that it would appeal the arbitrator's award. Thereafter, the City and Sofronski entered into a settlement agreement following negotiations through their counsel. Pursuant to the agreement, the City administratively reinstated Sofronski on December 10, 1985, and Sofronski then immediately retired and became eligible to receive pension benefits and a lump sum payment for accrued sick leave.[2]

On April 1, 1992, more than six years after his reinstatement and resignation, Sofronski filed an appeal with the Commission under the Commission's Regulation 15.02, alleging that his resignation was involuntary. The Regulation 15.02 provides:

15.02 *INVOLUNTARY RESIGNATION*
Any person who resigns from the Civil

Service may ask the Commission, in writing, *within thirty (30) days after the effective date of such resignation,* for a public hearing, stating his reasons. If on investigation there appears to be satisfactory evidence that the employee has been forced to resign against his will and without just cause, or that his separation from the service has been involuntary and without just cause, the Commission shall grant him a public hearing as hereinafter provided in the case of removal or demotion, and shall treat the separation as though it were a removal. (Emphasis added.)

The Commission held a hearing to determine whether it had jurisdiction to hear the appeal filed beyond the thirty-day appeal period set forth in the Regulation 15.02. After the hearing, the Commission permitted Sofronski's appeal nunc pro tunc and agreed to hear the merits of the appeal. The City appealed the Commission's decision to the trial court.

While the City's appeal is pending, the Commission proceeded to hold hearings on the merits. In its decision issued on January 20, 1993, one Commissioner recused himself from the case, and the two remaining Commissioners rendered a split decision on the issue of the voluntariness of Sofronski's resignation. The tie vote maintained the status quo, thereby upholding Sofronski's resignation as voluntary. *See AT & T Communications of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 131 Pa.Cmwlth. 390, 570 A.2d 612 (1990) (where a party requests an administrative body to take action on a matter, a tie vote of that body is equivalent to a refusal to take action). Sofronski appealed the Commission's decision to the trial court.[3]

The trial court concluded that Sofronski failed to establish any basis for granting the

---

**1.** The arbitrator found just cause for discharging three other officers and tabled the grievances of four officers pending the outcome of the federal trial.

**2.** The City appealed the arbitrator's decision as to Gniotek. This Court reversed the trial court's decision affirming the arbitrator's award and remanded the matter for the arbitrator's consideration of the issue of Gniotek's dismissal based on

the testimony to be procured pursuant to the enforcement of the arbitrator's subpoena. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* 107 Pa.Cmwlth. 15, 527 A.2d 621 (1987).

**3.** The trial court consolidated the City's appeal from the grant of the appeal nunc pro tunc and Sofronski's appeal from the decision on the merits.

appeal nunc pro tunc, and that the Commission therefore lacked jurisdiction to hear Sofronski's appeal. The trial court also considered the merits of the appeal and concluded that the Commission's finding of the voluntariness of Sofronski's resignation is supported by the record. The trial court accordingly dismissed Sofronski's appeal.[4]

Sofronski first challenges the trial court's conclusion that the Commission lacked jurisdiction to hear his untimely appeal.

In granting the appeal nunc pro tunc, the Commission stated that (1) Sofronski previously appealed his 1984 discharge to the Commission, although he later withdrew the appeal after his grievance was submitted to the arbitrator; (2) the arbitrator awarded reinstatement of Sofronski; and (3) the City subsequently reinstated Sofronski pursuant to the settlement. However, none of these stated reasons justifies the grant of the appeal nunc pro tunc.

■ It is well established that the failure to timely appeal an administrative agency's action is a jurisdictional defect. *Falcon Oil Co. v. Department of Environmental Resources,* 148 Pa.Cmwlth. 90, 609 A.2d 876 (1992). Thus, the time for taking an appeal cannot be extended as a matter of grace or mere indulgence. *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979). The appellant must justify the delay in filing the appeal. *DiJohn v. Unemployment Compensation Board of Review,* 687 A.2d 1213 (Pa. Cmwlth.1997).

■ An appeal nunc pro tunc may be allowed, only where a delay in filing the appeal is caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant or his counsel or a third party. *Cook v. Unemploy-*

*ment Compensation Board of Review,* 543 Pa. 381, 671 A.2d 1130 (1996). The appellant must also establish that (1) the appeal was filed within a short time after learning of and having an opportunity to address the untimeliness; (2) the elapsed time period is of very short duration; and (3) the appellee is not prejudiced by the delay. *Id.*

■ Sofronski argues that the delay was caused by "fraud" committed by the City.[5] To support his argument, Sofronski states that the Police Department improperly discharged him without proof of any wrongdoing and without investigating the charges against him in disregard of its own rules, and that he entered into the settlement agreement on December 10, 1985 because of the City's misrepresentation that it would appeal the arbitrator's award when in fact it did not have any basis for challenging the arbitrator's award, except for its fear that he might be indicted by the U.S. attorney.[6]

At the outset, it must be noted that the issue of the propriety of Sofronski's 1984 discharge is not before this Court. That issue was submitted to the arbitrator, and Sofronski decided to settle the dispute after the arbitrator's award, by agreeing to be reinstated and then resign to receive pension benefits. Likewise, the question of whether the City had any basis to appeal the arbitrator's award or would have prevailed on appeal is not relevant in deciding whether Sofronski's delay in filing the appeal was justified. Sofronski fails to explain how the alleged motive or reasons for the City's intention to appeal the arbitrator's award caused his six-year delay following his resignation under the settlement.

■ Further, Sofronski failed to indicate when he discovered the alleged "fraud" committed by the City. The record shows that

---

4. Where, as here, a full and complete record of the proceedings before a local agency was made, this Court's scope of review is limited to determining whether the agency violated constitutional rights or committed an error of law, or whether necessary findings of facts are supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b); *Schmidt v. Borough of Stroudsburg,* 670 A.2d 208 (Pa.Cmwlth. 1996), *aff'd,* — Pa. —, 689 A.2d 223 (1997).

5. Sofronski admits that the delay in filing the appeal was not caused by a breakdown in the administrative process or a nonnegligent circumstances.

6. The City argues that the issue of whether the delay was caused by the City's fraudulent conduct was waived due to Sofronski's failure to raise it before the trial court. Because it appears that the trial court specifically rejected the claim of fraud in its opinion, we will address the issue.

after Sofronski's reinstatement and resignation, the parties litigated the dispute over Sofronski's entitlement to a pension credit and backpay from November 15, 1984 until his reinstatement on December 10, 1985.[7] In litigating that issue, Sofronski never attempted to repudiate either the settlement agreement or his resignation thereunder. Therefore, Sofronski failed to establish that he filed the appeal within a short period of time after learning of the alleged fraudulent conduct by the City.

■ It is undisputed that Sofronski was represented by the same counsel, who represents him in this proceeding, throughout the proceeding before the arbitrator, the settlement negotiations, his reinstatement and resignation, and the subsequent proceeding, and that before entering into the settlement agreement, he weighed all available options with his counsel. Hence, Sofronski's contention that the City's fraudulent conduct caused his six-year delay in filing the appeal is without merit. The trial court properly concluded that Sofronski failed to establish justification for granting the appeal nunc pro tunc, and that the Commission lacked jurisdiction to consider his appeal.

Although we have concluded that the Commission lacked jurisdiction to hear the untimely filed appeal, we will address Sofronski's claim that his resignation was involuntary, in light of the trial court's consideration of the issue.

The Commissioner who voted to deny Sofronski's appeal made the following findings:

(d) appellant made a conscious decision . . . to retire rather than face the prospect of a lengthy appeal in the Courts, which we all can recognize is expensive, time-consuming, and where there can be no guaranteed result; and

(e) appellant decided, albeit grudgingly, to resign and therefore avoid the delay, expense and uncertainty of this appeal process . . . .; and

(f) appellant determined to settle his case and, approximately seven years after the fact, now comes before this Commission and pleads to us that he was coerced at the

time and felt that he had no other options but to resign; and

(g) appellant was well aware that other officers similarly dismissed had instead elected to continue their appeal process without resorting to resignation and that they were ultimately totally vindicated and reinstated to their former employment with back pay and full emoluments, although appellant testified that at the time he believed his course to be futile, and

(h) appellant is in effect asking that I join with him in repudiating the settlement of his case that he made seven years ago because he changed his mind and thinks that now he could get a better deal, and if we allow this to occur then no settlement agreement is valid and one or the other of the parties could change their mind.

Commissioner Nicholas DiPiero's Opinion, p. 2.

Sofronski contends that he agreed to resign because he was broke and could not afford continued loss of income and legal expenses for defending the City's appeal, and that his resignation under such financial hardship or duress should be considered involuntary.

■ However, Sofronski's asserted financial hardship or duress does not constitute a basis for invalidating the settlement agreement and his resignation. In defining "duress," the Pennsylvania Supreme Court stated:

Duress has been defined as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. . . . The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm. . . . Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness. . . . Moreover, in the absence of threats of actual bodily harm,

7. In August 1986, the arbitrator awarded Sofronski backpay for that period.

there can be no duress where the contracting party is free to consult with counsel.

*Carrier v. William Penn Broadcasting Co.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967) (quoting *Smith v. Lenchner,* 204 Pa. Superior Ct. 500, 504, 205 A.2d 626, 628 (1964)) (citations omitted).

At the hearing, Sofronski's attorney testified that during the settlement negotiations, he and the City deputy solicitor tried to come up with a "creative way" so that Sofronski could get his pension. October 28, 1992 Hearing N.T., p. 230. Sofronski's attorney further testified that he discussed the available options with Sofronski before Sofronski entered into the settlement agreement, and that he advised Sofronski that the settlement agreement would constitute a "complete and final settlement" of the dispute. *Id.* at 236–37.

It is also undisputed that Sofronski, represented by his attorney, signed the Report of Separation verifying that he tendered resignation "voluntarily and of [his] own will" and not under "any threat, force, duress, or any undue influence...." He also certified in the Personnel Employee Record that the personnel action recorded therein was "executed freely and voluntarily with no undue influence or duress by any appointing authority."

As the Superior Court stated: "[s]ettlement of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained. Otherwise any settlement agreement will serve no useful purpose." *Greentree Cinemas, Inc. v. Hakim,* 289 Pa. Superior Ct. 39, 42, 432 A.2d 1039, 1041 (1981). Since Sofronski consulted his attorney, weighed his options and decided to enter into the settlement agreement, his claim that his resignation pursuant the agreement was involuntary is without merit. *See also Hamilton v. Hamilton,* 404 Pa. Superior Ct. 533, 591 A.2d 720 (1991) (the court rejected the claim by the eighteen-year old, unemployed and pregnant woman that she entered into the antenuptial agreement under duress, where she was free to consult her counsel before signing the agreement).

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 28th day of May, 1997, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.