IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen DeLuca,                          :
                           Appellant    :
                                         :
        v.                               :    No. 1024 C.D. 2019
                                         :    Submitted: May 12, 2020
Mountaintop Area Joint Sanitary          :
Authority and Thomas G. Keiper           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: June 16, 2020

         Colleen DeLuca (DeLuca) appeals two orders of the Court of Common
Pleas of Luzerne County (trial court). The first order denied the motion to recuse
the Honorable William H. Amesbury from conducting a hearing on the petition of
Mountaintop Area Joint Sanitary Authority and Thomas G. Keiper (collectively, the
Authority) to enforce a settlement agreement. The second order granted the
Authority's petition. On appeal, DeLuca contends that Judge Amesbury was
obligated to recuse himself because of his involvement in the settlement
discussions. DeLuca further contends that the evidence showed that she did not
freely agree to the terms of the agreement that were entered into the record to settle
her *de facto* condemnation petition against the Authority. For the following
reasons, we affirm the trial court's orders.

## Background

         DeLuca owns a single-family home in Mountain Top, Pennsylvania,
located adjacent to the Authority's sewage treatment plant. On several occasions

between June 27, 2006, and April 26, 2011, DeLuca's property was flooded with untreated sewage. The infiltrations stopped when, in late 2011, the Authority upgraded its system.

On May 14, 2015, DeLuca filed a petition for appointment of a board of viewers pursuant to Section 502(c) of the Eminent Domain Code.[1] The petition alleged that the Authority had effected a *de facto* taking of her property by operating its sewage system in a way that caused sewage infiltration of her property.

In response, the Authority filed preliminary objections pursuant to Section 504(d) of the Eminent Domain Code,[2] which challenged the legality of

---

[1] Section 502(c) provides:

> (c)    Condemnation where no declaration of taking has been filed.--
>
> (1)    *An owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a)* setting forth the factual basis of the petition.
>
> (2)    The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.
>
> (3)    The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.
>
> (4)    A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as grantor and the condemnor as grantee.

26 Pa. C.S. §502(c) (emphasis added).

[2] It states, in pertinent part, as follows:

> (d) Preliminary objections.--
>
> (1) Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers.

DeLuca's petition. Alternatively, the Authority challenged the facts alleged in the petition and requested an evidentiary hearing on whether it had effected a *de facto* taking of DeLuca's property. The trial court denied the Authority's request to dismiss DeLuca's petition but granted the Authority an evidentiary hearing.

On June 29, 2016, after hearing the evidence of the parties, the trial court held that the Authority had effected a *de facto* condemnation of DeLuca's property between June 27, 2006, and April 26, 2011. In *In Re Mountaintop Area Joint Sanitary Authority*, 166 A.3d 553 (Pa. Cmwlth. 2017), this Court affirmed the trial court. DeLuca's *de facto* condemnation action proceeded with the appointment of a board of viewers.

By way of further background, in 2011, DeLuca filed a two-count action against the Authority.[3] The first count sounded in trespass and sought damages as a result of the sewage infiltrations. The second count was filed under the Whistleblower Law, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428. DeLuca's cleaning business had a contract with the Authority that she alleged was terminated because she complained about the sewage entering her house. The whistleblower/trespass action was assigned to Judge Amesbury.

On November 27, 2017, Judge Amesbury convened a pre-trial and settlement conference, which resulted in a settlement of DeLuca's *de facto*

---

(2) Objections to the form of the petition or the appointment or the qualifications of the viewers in any proceeding or to the legal sufficiency or factual basis of a petition filed under section 502(c) (relating to petition for appointment of viewers) are waived unless included in preliminary objections.

26 Pa. C.S. §504(d).

[3] The case is captioned *Colleen DeLuca v. Mountaintop Area Joint Sanitary Authority and Thomas G. Keiper* (C.C.P. Luzerne Cty., No. 2011 CV 14420).

condemnation and whistleblower/trespass actions.  The terms of the settlement were placed into the record, which states as follows:

> THE COURT:  We had a count of negligence.  We have an eminent domain issue which constituted a tak[ing] as verified by an opinion that was rendered by my colleague Judge Tina Polachek Gartley and was affirmed by the Appellate Court[.]
>
> * * *
>
> THE COURT:  At the same time we have a claim for punitive damages, as well as a whistleblower action.
>
> The purpose in meeting today was to see if we could bring a resolution, a complete resolution to all outstanding theories that were presented before the [trial court], including the three that I just mentioned.  This would include any allegations against the municipality and there will be no disparaging remarks to any present employee, management personnel, non-management personnel or solicitor past or present.
>
> Did I cover that broad enough?
>
> MR. KARPOWICH:  And the public, Your Honor.
>
> THE COURT:  Okay.
>
> MR. McDONOUGH:  Your Honor, the eminent domain was under a separate court term and number.  This court term and number was only for the trespass and for the whistleblower.
>
> THE COURT:  You brought the negligence claim separately?
>
> MR. McDONOUGH:  They were brought with the whistleblower originally and then there was a separate eminent domain proceeding.
>
> THE COURT:  That's under 5864 of 2015.  So all will be included.
>
> MR. McDONOUGH:  Both lawsuits in all three counts, yes, Your Honor.

THE COURT: The settlement amount is $450,000. That has been entered into by the parties. On behalf of the plaintiff, sir, is that an agreement?

Mr. McDONOUGH: That part of the settlement, yes, Your Honor.

MR. KARPOWICH: Yes, Your Honor.

MR. ABELL: Yes, Your Honor.

Notes of Testimony (N.T.), 11/27/2017, at 2-3; Reproduced Record at 187a-88a (R.R. __).[4] The Authority also agreed to provide DeLuca with a letter from its engineer detailing what "physical work was done by the Authority that addressed the prior overflow events." *Id.* at 4; R.R. 189a. The Authority's counsel explained that the "purpose of that letter will be so Ms. DeLuca can then provide that to a prospective purchaser of her house as part of her required seller's disclosure statement." *Id.*; R.R. 189a.

Following the conference, DeLuca's counsel prepared a written settlement agreement and release for execution by the parties. The document stated that the Authority would pay DeLuca $450,000 and provide a letter from a professional engineer. The document also provided that DeLuca would terminate her whistleblower/trespass and condemnation actions and release the Authority. Finally, the document included a mutual non-disparagement agreement.

DeLuca refused to sign the agreement as requested by her counsel. In April 2018, the Authority filed a petition to enforce the settlement agreement.

On May 15, 2018, DeLuca's counsel filed a motion to withdraw as counsel. At the hearing on that motion, DeLuca's counsel, Attorney Richard Abell,

---

[4] Attorney Richard Abell represented DeLuca, and Attorneys Sean McDonough and Donald Karpowich represented the Authority.

testified that DeLuca had not paid his invoices for legal services in several years and that there had been a breakdown in the attorney-client relationship. DeLuca voiced "no disagreement" with Attorney Abell's request to withdraw as counsel; the trial court granted the motion. N.T., 5/25/2018, at 47; R.R. 145a. The trial court gave DeLuca 60 days to obtain new counsel.

DeLuca retained the law firm McNees Wallace & Nurick LLC, which entered its appearance on behalf of DeLuca in both the condemnation and whistleblower/trespass actions. The trial court postponed the hearing on the Authority's petition to enforce settlement scheduled for August 7, 2018, to October 30, 2018.

On October 12, 2018, DeLuca filed a motion to recuse Judge Amesbury on the basis of Rule 2.11 of the Pennsylvania Code of Judicial Conduct.[5] The motion alleged that because Judge Amesbury would have to consider his own statements and actions during the settlement discussions, he was disqualified from conducting the hearing on the petition to enforce settlement agreement. Motion to Recuse at 4, ¶¶19-20; R.R. 153a.

---

[5] It states, in pertinent part, as follows:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
>> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, *or personal knowledge of facts that are in dispute in the proceeding*.
>>
>> * * *
>>
>> (6) The judge:
>>
>> * * *
>>
>>> (c) was a material witness concerning the matter.

PA. CODE OF JUDICIAL CONDUCT RULE 2.11 (emphasis added).

At the October 30, 2018, hearing on DeLuca's recusal motion, the Authority objected to DeLuca's motion as untimely. DeLuca responded that her motion was timely because she had engaged new counsel, who needed to retrieve and review the files of prior counsel. The trial court postponed the hearing on the Authority's petition to enforce the settlement agreement.

On December 9, 2018, the trial court scheduled an evidentiary hearing on DeLuca's recusal motion for February 11, 2019. The parties agreed that the evidentiary hearing would address both DeLuca's recusal motion and the Authority's petition to enforce the settlement agreement.

At the evidentiary hearing, DeLuca testified that in September 2017, her attorney advised her that the trial court wanted to conduct "a combined pretrial/settlement conference in November" in her whistleblower/trespass action. N.T., 2/11/2019, at 25; R.R. 223a. In October 2017, he notified her that the conference had been scheduled for November 27, 2017, and that she should be prepared to discuss settlement. DeLuca testified that on that day, she was escorted into a room. Fifteen minutes later, Attorney Abell and Judge Amesbury entered the room. DeLuca testified as follows:

> Dick Abell walked around in front of me, sat at a desk, put his feet up and locked his hands behind his head. Judge Amesbury grabbed a rolling chair, rolled it towards me, grabbed my hands, slid his knees between my skirt, screamed at the top of his lungs with his halitosis coffee breath.

*Id.* at 35; R.R. 226a. DeLuca stated that Judge Amesbury told her that she needed to take the Authority's offer "to get off his f[**]king dockets." *Id.* He told her that it was the "best deal" she was going to get. *Id.* When asked how she responded, DeLuca testified:

7

> I was unaccepting of the $10,000, my job back and me throwing away the win offered by Judge Gartley [in the condemnation case].

*Id.* at 35-36; R.R. 226a.

DeLuca also testified that during the settlement conference, she contacted Paul Logan, Esq., an attorney who had previously worked with Attorney Abell in her dispute with the Authority. That conversation lasted approximately 30 minutes. DeLuca stated that Attorney Logan told her to "buckle down" and "get this done"; he also told her to contact her bank for the payoff amount for her house. *Id.* at 39; R.R. 227a.

DeLuca acknowledged that she stated on the record that she agreed to the settlement, but she could not explain her statement. DeLuca testified that she believed that the settlement applied only to the whistleblower/trespass action. On cross-examination, DeLuca conceded that at no point during the settlement conference did she tell Judge Amesbury that she was dissatisfied with Attorney Abell or his representation.

The Authority presented testimony from Toni Rogan, the Chairwoman of the Authority. Rogan testified that at the settlement conference, she did not observe Judge Amesbury demonstrate either a lack of patience or frustration. She did not observe DeLuca to be under duress. Rogan testified that after the settlement conference, DeLuca hugged her and said "[t]hank you." *Id.* at 87; R.R. 239a.

At the conclusion of that hearing, the parties agreed to keep the record open for the sworn testimony of Attorney Abell, who had represented DeLuca at the November 27, 2017, settlement conference. The record closed on May 15, 2019.

8

On May 15, 2019, Judge Amesbury entered an order denying DeLuca's motion for his recusal. The order gave the parties until June 15, 2019, to submit final briefs on the Authority's petition to enforce the settlement agreement.

Subsequently, on July 19, 2019, the trial court granted the Authority's petition to enforce the settlement agreement. The order directed DeLuca to execute the written settlement agreement and release and to comply with its terms and conditions. With regard to DeLuca's assertion that her counsel had been ineffective, the trial court reasoned that she may have a claim against her attorney for malpractice, but that claim was not relevant to the enforceability of the settlement agreement. The trial court found no basis for her claim of duress or undue pressure and rejected her contention that she did not freely agree to the terms of the settlement. The trial court also held that assuming that DeLuca mistakenly agreed to the settlement, her mistake was unilateral. As such, it did not negate the validity of the parties' settlement agreement.

DeLuca then appealed the trial court's orders.

## Appeal

On appeal,[6] DeLuca raises three issues. First, she argues that the trial court abused its discretion in denying her motion for the judge's recusal. Second,

---

[6] When reviewing a trial court's decision to enforce a settlement agreement:

> [O]ur scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Hydrojet Services, Inc. v. Reading Area Water Authority*, 220 A.3d 1199, 1204 n.4 (Pa. Cmwlth. 2019) (quoting *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002)).

she argues that the trial court erred in granting the petition to enforce the settlement agreement when the evidence showed that DeLuca did not freely enter into the agreement. Third, she argues that the trial court erred in ordering her to sign a written settlement agreement with terms that had not been discussed or agreed upon at the November 27, 2017, settlement conference.

### Motion for Recusal

DeLuca argues that Judge Amesbury abused his discretion by failing to recuse himself from the proceeding on the Authority's petition to enforce the settlement agreement. DeLuca contends that Judge Amesbury's participation in the settlement discussions and the pressure he placed upon DeLuca required his recusal. The Authority responds that DeLuca waived her right to seek recusal because she did not timely file her motion and, further, Judge Amesbury properly denied the motion.

We begin with a review of the relevant law. The party requesting recusal must produce evidence establishing bias, prejudice or unfairness "which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998). The motion for recusal "is initially directed to and decided by the jurist whose impartiality is being challenged." *Id.* The Supreme Court has explained:

> In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. *This is a personal and unreviewable decision that only the jurist can make…. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse*

10

> *of discretion….* In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Id.* (emphasis added and citations omitted).

A party is required to request a judge's recusal "at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse." *Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017). The party that does not move promptly to recuse the assigned judge upon learning the facts relevant to recusal waives the issue. *Id.*

With these principles in mind, we turn to DeLuca's challenge to Judge Amesbury's denial of her motion to recuse. She contends that Judge Amesbury abused his discretion because he was a fact witness to the settlement discussions and was the target of "serious accusations" of misconduct. DeLuca Brief at 25. The Authority responds that DeLuca's sensational and unsubstantiated account is refuted by the transcript of every proceeding in which Judge Amesbury participated, where he demonstrated both patience and objectivity.[7] The Authority also contends that DeLuca waived the issue of Judge Amesbury's disqualification.

---

[7] On April 29, 2019, Attorney Abell testified that the conduct of which DeLuca has accused Judge Amesbury did not occur:

> BY MR. McDONOUGH:
>
> Q. Was there anything in the conduct of Judge Amesbury, that you observed, that led you to conclude Ms. DeLuca was being coerced by the [trial] [c]ourt into accepting a settlement she did not want on November 27, 2017?
>
> A. Nothing. I would not have put the settlement on the record if I felt that there was any coercion at all that had led to her agreement.
>
> Q. Including any coercion at all by Judge Amesbury?
>
> A. Including any coercion by anyone, including Judge Amesbury.

N.T., 4/29/2019, at 41; R.R. 319a.

11

We address, first, the timeliness of DeLuca's motion to recuse. On June 25, 2018, DeLuca's new counsel entered their appearances. On August 21, 2018, DeLuca moved to continue the hearing to enforce the settlement agreement, explaining that prior counsel had not yet turned over the case file. The trial court granted the continuance and scheduled the hearing on the Authority's petition to enforce the settlement agreement for October 30, 2018. DeLuca filed her motion to recuse Judge Amesbury on October 12, 2018.

At the October 30, 2018, hearing, which addressed the intervening recusal motion rather than the Authority's petition to enforce the settlement agreement, the Authority asserted that DeLuca had waived her right to seek the judge's recusal by waiting until the eve of trial to file the motion. DeLuca's counsel explained to Judge Amesbury the difficulties encountered taking over the case:

> We were retained over the summer, as Counsel mentioned. We began our due diligence. Obviously, this case has a very extensive history. There was quite a file to review. As the Court knows, based on our motion for continuance of this hearing, we had difficulty initially retrieving records from her prior counsel, the Powell firm, which went out of business, which further compounded the inability to get those records.
>
> So, yes, the motion was filed in the last month before this hearing, but it was timely based on our due diligence in retrieving the necessary records, reviewing the file and speaking with Ms. DeLuca about her expected testimony here today.

Hearing Transcript, 10/30/2018, at 9-10; R.R. 171a-72a. Given these circumstances, DeLuca argues to this Court that her motion for recusal was filed "at the earliest possible moment." *Lomas*, 170 A.3d at 390. In support, she notes that a "request for the disqualification of a trial judge is a most serious undertaking which should not be pursued absent thorough factual investigation and legal

12

research." *Johnson v. District Court In and For Jefferson County*, 674 P.2d 952, 957 (Colo. 1984).

The Authority responds that DeLuca's sensational accusation underscores the need for a prompt recusal motion. The Authority notes that the recusal motion itself did not contain a hint of the conduct to which DeLuca testified on February 11, 2019. It argues that DeLuca waived the issue by waiting 14 months to advance her "destructive narrative against a sitting jurist to support a basis to renege on an agreement made over a year before in time." Authority Brief at 15. The Authority warns that allowing this kind of delay will only promote judge shopping, a practice "universally condemned." *Id.* *See, e.g., Commonwealth v. Ryan*, 400 A.2d 1264 (Pa. 1979).[8]

A recusal motion must be filed at "the earliest possible moment" after the facts relevant to disqualification of the judge are learned. *Lomas*, 170 A.3d at 390. In *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 489 A.2d 1291, 1300 (Pa. 1985), the recusal motion was filed eight months after the relevant facts were learned. That delay was held untimely and the recusal issue waived. In *Lomas*, 170 A.3d at 391, the facts supporting the recusal motion were learned on September 6, 2007, and the motion was filed on October 15, 2007. This was held not to satisfy the "earliest possible moment" standard. DeLuca points out that these cases involved motions to recuse that were filed after an adverse ruling. Here, by contrast, DeLuca's motion was filed before the trial court had ruled on the merits of the Authority's petition to enforce the settlement agreement. We conclude

---

[8] The Authority also notes that neither DeLuca nor her counsel questioned Attorney Abell, Judge Amesbury's staff that was present on November 27, 2017, or the Judge himself, and DeLuca's counsel did not advise the trial court of the nature of DeLuca's charges when the parties appeared before Judge Amesbury on October 30, 2018.

that the principles established in *Lomas* and *Reilly* are not limited to the singular circumstance of a post-verdict motion to recuse.

The facts central to DeLuca's motion to recuse were known to her in November of 2017. DeLuca explains that her change in counsel, who needed to investigate the settlement conference, excused her waiting almost one year to file her recusal motion. We disagree that a change in counsel excuses this delay. DeLuca had a responsibility to file the motion at least by April of 2018 when the Authority filed its petition, thereby informing her that there was going to be a hearing on the settlement. The fact that DeLuca's relationship with her former counsel was strained did not relieve her of this responsibility. We agree with the Authority that DeLuca waived the issue of disqualification of Judge Amesbury by waiting until October of 2018 to file her motion to recuse.

In any case, we agree with the Authority that Judge Amesbury did not abuse his discretion in denying DeLuca's motion. The party who seeks to disqualify a trial judge must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Arnold v. Arnold*, 847 A.2d 674, 680 (Pa. Super. 2004). DeLuca did not produce this evidence.

There is a presumption that judges of this Commonwealth are "honorable, fair and competent," *Abu-Jamal*, 720 A.2d at 89 (citation omitted), and, when confronted with a recusal demand, are able to determine whether they can rule "in an impartial manner, free of personal bias or interest in the outcome." *Arnold*, 847 A.2d at 680 (citation omitted). Our Supreme Court has recognized that:

> [w]hile the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and fairness pervading

14

the whole system of judicature, so that courts may as near as possible be above suspicion, *there is, on the other side, an important issue at stake: that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause....* If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or *litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case.* If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feelings of unfairness or hostility to the litigants in a case.

*Reilly*, 489 A.2d at 1299 (emphasis added). Simply, DeLuca did not present evidence to support her claim of bias or hostility on the part of Judge Amesbury. Her "serious accusations" were not substantiated; contradicted by every other participant in the settlement discussions; and had no support in the transcripts involving Judge Amesbury's conduct of the various proceedings.

DeLuca misapprehends the Pennsylvania Code of Judicial Conduct. The "personal knowledge" that can disqualify a jurist refers to knowledge that is extra-judicial. *See* PA. CODE OF JUDICIAL CONDUCT RULE 2.11(A)(1). Here, the knowledge of the settlement that Judge Amesbury acquired occurred in the course of his acting as a jurist. Further, our Supreme Court has explained that the Code of Judicial Conduct is not enforceable "by any tribunal":

To presume that the Code [of Judicial Conduct] or its *alleged violations can be reviewed by any tribunal other than those we*

15

*authorize* is a misapprehension of the purpose of the Code [of Judicial Conduct], and is seen as an impermissible meddling into the administrative and supervisory functions of this Court over the entire judiciary.

*Reilly*, 489 A.2d at 1299 (emphasis added).

The scandalous nature of DeLuca's claims against Judge Amesbury did not, in itself, require his recusal. To so hold would set a dangerous precedent. We reject DeLuca's claim that Judge Amesbury abused his discretion in denying her recusal motion. We conclude that his decision that he could rule with impartiality, notwithstanding DeLuca's "serious accusations," is "final," *Reilly*, 489 A.2d at 1299, and will not be set aside, *Abu-Jamal*, 720 A.2d at 89.

**Settlement Agreement**

In her second argument, DeLuca asserts that the trial court erred in granting the Authority's petition to enforce the settlement agreement. She contends that there was no meeting of the minds on the settlement; that her counsel was ineffective; and that she was unduly pressured by her counsel and the trial judge at the settlement conference.

The Authority responds that the terms of its settlement with DeLuca were placed on the record before the trial judge. The agreement was complete in its terms and, thus, binding and enforceable. In *Mastroni-Mucker v. Allstate Insurance Company*, 976 A.2d 510, 519 (Pa. Super. 2009), for example, the Superior Court held that "a settlement argument that was placed upon the record in open court by all of the parties and their attorneys" was enforceable even though the parties did not agree to "a particular form of release."[9] The Authority argues

---

[9] The Authority also points out that federal court decisions routinely hold parties to their on-the-record recitations of a settlement agreement, notwithstanding subsequent disputes. Authority Brief at 37-38. *See, e.g.*, *United States v. Sforza,* 326 F.3d 107, 115-116 (2d Cir.

16

that the record does not support DeLuca's contention that she did not freely agree to settle her dispute with the Authority.

A settlement agreement is "in essence a contract binding the parties thereto." *Roe v. Pennsylvania Game Commission*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016) (quoting *Commonwealth v. U.S. Steel Corporation*, 325 A.2d 324, 328 (Pa. Cmwlth. 1974)). For this reason, courts construe settlement agreements according to the "traditional principles of contract construction." *Avery v. Pennsylvania Labor Relations Board*, 509 A.2d 888, 891 (Pa. Cmwlth. 1986). Accordingly, a settlement agreement must contain all the elements of a valid contract. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). This includes an offer, acceptance, and consideration. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991). As with any contract, the enforceability of a settlement agreement requires that "the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement]." *Mazzella*, 739 A.2d at 536 (quoting *Onyx Oils & Resins, Inc. v. Moss*, 80 A.2d 815, 817 (Pa. 1951)). An oral settlement agreement is enforceable, and an agreement presented to the presiding judge "to settle the case for an agreed amount of money, is valid and binding despite the absence of any writing or formality." *Wolf v. Consolidated Rail Corporation*, 840 A.2d 1004, 1006 (Pa. Super. 2003).

Here, the record shows that the Authority offered DeLuca $450,000 and a letter from its engineer detailing the Authority's repairs to the sewage system in settlement of all claims. When asked if she would accept the offer, DeLuca testified as follows:

---

2003) (affirming the district court's enforcement of the parties' on-the-record settlement agreement despite the defendants' subsequent contention that "they never agreed to settle without a full release from all possible civil or criminal liability").

17

[THE AUTHORITY]: If you could, I'd like Ms. DeLuca to state her understanding that those terms are agreeable to her.

MS. DeLUCA: They are.

THE COURT: You are satisfied.

MS. DeLUCA: I'm satisfied.

[THE AUTHORITY]: You understand there's [sic] no more claims that will remain after today's proceedings?

MS. DeLUCA: I do.

THE COURT: It's all done. This is what we refer to as global. All actions before us have now been resolved for the amount that we've previously identified, the $450,000.

MS. DeLUCA: Eleven years later, they're done.

N.T., 11/27/2017, at 5; R.R. 190a. The offer and acceptance of the settlement were presented on the record.

Nevertheless, DeLuca argues that the settlement agreement is not enforceable because: (1) she did not have effective assistance of counsel before or during the settlement conference; (2) she felt a great deal of pressure from the trial court and her prior counsel to agree to a settlement; (3) there was not a meeting of the minds on the scope of the purported settlement agreement; and (4) the two lawsuits subject to the settlement were never consolidated.

DeLuca's dissatisfaction with her prior counsel does not negate her settlement with the Authority, and she cites no legal authority to support this argument. DeLuca confirmed her understanding of the settlement on the record, and she did not voice any concern about her attorney's representation. As the trial court observed, DeLuca may have a claim of malpractice against her attorney. *See McMahon v. Shea*, 657 A.2d 938 (Pa. Super. 1995) (holding that attorney's

18

negligent failure to advise client about the impact of written divorce settlement on future rights constituted malpractice). However, DeLuca's claim against her prior counsel is irrelevant to the validity of the settlement.

DeLuca asserts that she was under duress at the settlement conference, which is defined as:

> that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.... The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm.... Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness.... *Moreover, in the absence of threats of actual bodily harm, there can be no duress where the contracting party is free to consult with counsel.*

*Sofronski v. Civil Service Commission, City of Philadelphia*, 695 A.2d 921, 925-26 (Pa. Cmwlth. 1997) (emphasis added) (quoting *Carrier v. William Penn Broadcasting Company,* 233 A.2d 519, 521 (Pa. 1967)). In support of her claim of duress, DeLuca cites her testimony at the hearing of February 11, 2019.

In that testimony, DeLuca asserted, in some detail, that her attorney and Judge Amesbury behaved in an untoward manner. Nevertheless, after her exchange with Judge Amesbury, DeLuca testified that she rejected a settlement offer of "$10,000 [and her] job back[.]" N.T., 2/11/2019, at 36; R.R. 226a. DeLuca's own account shows that she stood up to this "duress." It did not influence her decision. Further, DeLuca had counsel with her for the entire settlement conference, and she spoke with her other attorney during the settlement conference. She was not threatened with bodily harm. To the extent DeLuca felt some pressure

19

to settle, that pressure was insufficient to "overcome the mind of a person of ordinary firmness." *Sofronski,* 695 A.2d at 925 (quoting *Carrier,* 233 A.2d at 521).

DeLuca insists that there was no meeting of the minds because she did not intend to settle the condemnation action and, further, the issue of the salability of her house was still outstanding. This argument lacks merit given the on-the-record recital about her house:

> [The Authority] will provide a letter that we will then have verified by our engineer. The letter will be provided by an engineer on behalf of the Authority, and it will set forth the specifics as to what physical work was done by the Authority that addressed the prior overflow events. *The purpose of that letter will be so Ms. DeLuca can then provide that to a prospective purchaser of her house as part of her required seller's disclosure statement.*

N.T., 11/27/2017, at 4; R.R. 189a (emphasis added). If there was any mistake here, it was not a mutual mistake. *See Smith v. Thomas Jefferson University Hospital,* 621 A.2d 1030, 1032 (Pa. Super. 1993) (a unilateral mistake "not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, [] affords no basis for relief").

Alternatively, DeLuca contends that the trial court improperly dismissed her condemnation action because her two lawsuits were never consolidated. This is just another way of advancing the argument that she did not intend to settle the condemnation action. As explained above, the parties reached a settlement of both lawsuits, *i.e.*, DeLuca's whistleblower/trespass and her *de facto* condemnation matters. Both lawsuits were identified by docket number on the record.

20

A settlement agreement is enforceable where the parties report to the trial court that they reached an agreement; the terms of the agreement were placed on the record; and each party confirmed their understanding of the agreement. *Johnston v. Johnston*, 499 A.2d 1074, 1077 (Pa. Super. 1985). *See also Luber v. Luber*, 614 A.2d 771, 774 (Pa. Super. 1992) (affirming trial court's enforcement of a settlement agreement where "[t]he agreement placed on the record and the colloquies following thereafter clearly show[ed] that the parties agreed upon the essential terms of the Settlement Agreement, [and] intended them to be binding between them...." (quotation omitted)). Similarly, in *Cook v. City of Philadelphia* (Pa. Cmwlth., No. 2304 C.D. 2015, filed November 28, 2016) (unreported), *appeal denied*, 170 A.3d 1011 (Pa. 2017),[10] this Court affirmed the trial court's order to enforce a settlement where the settlement terms were placed on the record.

DeLuca agreed to settle her whistleblower/trespass and condemnation actions in exchange for the Authority's payment of $450,000 and a letter from its engineer regarding the repairs to the sewer lines. She confirmed her understanding of the agreement. All these terms were recited on the record. DeLuca did not make her case that her agreement to settle resulted from duress. Accordingly, the trial court did not err in granting the Authority's petition to enforce settlement agreement.

### Execution of Settlement Agreement

Finally, DeLuca argues that the trial court erred in directing her to sign the proffered release. DeLuca contends that she did not authorize her counsel to prepare that release. The Authority responds that ordering DeLuca to sign the

---

[10] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

21

proffered release was the appropriate remedy for DeLuca's continued refusal to conclude the settlement to which the parties agreed in open court.

As explained, there was an agreement as to all material terms of the settlement and, thus, it was enforceable. *Mazzella*, 739 A.2d at 536. As part of the settlement, the parties agreed to sign a mutual general release. Specifically, the parties agreed as follows:

> MR. KARPOWICH: Counsel for [DeLuca], Your Honor, is going to prepare a general release for the parties to sign.
>
> MR. McDONOUGH: It will be a mutual general release with non-disparagement provisions going both ways.

N.T., 11/27/2017, at 4; R.R. 189a. At no point did DeLuca inform the trial court or the Authority that she would not sign a release. The proffered release was consistent with the settlement terms that had been placed on the record on November 27, 2017, and DeLuca does not argue otherwise.

"As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board*, 739 A.2d 133, 136 (Pa. 1999) (citations omitted). Neither party argues that signatures were required by statute or regulation. Thus, the question is whether the parties intended for DeLuca to sign the proffered release.

"Where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract." *Id.* at 138 (quoting *Ketchum v. Conneaut Lake Company*, 163 A. 534,

22

535 (Pa. 1932)). The record shows that the parties intended to be bound under the terms of the settlement regardless of whether DeLuca executed the proffered release. The settlement was not contingent on DeLuca signing the proffered release.

As the Pennsylvania Supreme Court has explained, "absent any legal requirement for the signatures, an enforceable contract was formed between the parties." *Shovel Transfer and Storage*, 739 A.2d at 139. It was not necessary for the trial court to order DeLuca to sign the proffered release. The settlement agreement and release were not contingent upon execution of a written contract. The trial court, however, did not abuse its discretion in ordering DeLuca to sign the agreement and release because she had agreed on the record to sign a release.

## Conclusion

For all the above-stated reasons, we affirm the trial court's order to deny DeLuca's motion to recuse the judge presiding in the matter and its order granting the Authority's petition to enforce the parties' settlement agreement of November 17, 2017.

MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen DeLuca,                    :
                        Appellant  :
                                   :
        v.                         :   No. 1024 C.D. 2019
                                   :
Mountaintop Area Joint Sanitary    :
Authority and Thomas G. Keiper     :

# **O R D E R**

AND NOW, this 16th day of June, 2020, the orders of the Court of Common Pleas of Luzerne County, dated May 15, 2019, and July 9, 2019, are AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge